JOHN W. HUBER, United States Attorney (#7226)
CARLOS A. ESQUEDA, Assistant United States Attorney (#5386)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone:  (801)524-5682
_____

IN THE UNTED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> OLEG MIKHAYLOVICH TISHCHENKO, <br><br> Defendant. | Case No. 1:16-cr-00034 DAK <br><br> **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNTS 4 AND 5** <br><br> Judge Dale A. Kimball |

The United States of America, by and through Assistant United States Attorney, Carlos A. Esqueda, respectfully request that this Court deny defendant's motion to dismiss counts four and five of the Indictment on the grounds that (1) the indictment meets all constitutional standards of notice pleading, providing the defendant notice of the charges and what to prepare as a defense, (2) a "substantial step" is a question of fact for the trier of fact rendering his motion premature, and (3) the evidence supports that the defendant took a substantial step toward the completion of his crimes.

# ARGUMENT

A. *The Indictment is Sufficient.*

The indictment sets forth all the elements required for attempted Arms Control Act and Smuggling violations, provides the defendant fair notice of the charges he faces and what he must defend. "An indictment need only meet minimal constitutional standards, and we determine the sufficiency of an indictment by practical rather than technical considerations."[1] "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense."[2] A court determines "the sufficiency of an indictment by practical rather than technical considerations."[3] "The test of the validity of the indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to *minimal* constitutional standards."[4]

The sufficiency of an indictment rests upon whether the indictment provides the elements of the offense and enables the accused to plead an acquittal or conviction as a bar to subsequent prosecution, sufficiency requires an indictment to "*fairly inform* [] the defendant of the charge against which he must defend."[5]

---

[1] *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997) (citing *United States v. Dahlman*, 13 F.3d 1391, 1400 (10th Cir.1993)). See also, *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) ("To meet the demands of the Fifth and Sixth Amendments, an indictment must (1) contain the elements of the charged offense and fairly inform a defendant of the charges against him, and (2) enable him to plead double jeopardy in defense of future prosecutions for the same offense."), *Hagner v. United States*, 285 U.S. 427 (1932); *United States v. Debrow*, 346 U.S. 374 (1953).
[2] *United States v. Poole*, 929 F.2d 1476, 1478 (10th Cir.1991).
[3] *United States v. Gama-Bastidas*, 222 F. 3d 779, 785 (10th Cir. 2000).
[4] *Id*. (quoting, *United States v. Fitzgerald*, 89 F.3d 218, 222 (5th Cir.1996).
[5] *United States v. Resendiz*-Ponce, 549 U.S. 102, 107 (2007) (emphasis added) (upholding the test established in *Hamling v. United States,* 418 U.S. 87 (1974).

Challenging an indictment for sufficiency prior to verdict requires a court to review the indictment liberally while post-verdict requires the maximum liberality.[6]

Counts four and five mirror the statutes. Counts four and five state the scienter, knowingly and willfully for count four and fraudulently and willfully for count five. Each count informs the defendant that the charges are attempts to commit the specified crimes. Counts four and five also specifically identifies the technical data that the defendant seeks to export from the United States to Moscow, Russia. Confusingly, the defendant does not challenge Counts two and three that use the exact same language, except for the attempt language, as counts four and five. If the defendant does not challenge counts two and three, he cannot challenge counts four and five.

Specifically relevant to this case, in *Resendiz-Ponce*, the Court held an indictment, "need not specifically allege a particular overt act or any other 'component part' of the offense."[7] The Court added that alleging an "attempt," and specifying the time and place of the defendant's alleged conduct is enough to satisfy both prongs of the *Hamling* test.[8] The Tishchenko indictment alleges "attempt" in the caption and the body of counts four and five; it also lists specific dates of conduct. The Tishchenko indictment does exactly what is required by United States Supreme Court decisions.

---

[6] *Id.*
[7] *Id.* at note 3.
[8] *Id.* at 107, 109-10. (The Resendiz-Ponce Court contrasts *Russell v. United States*, 369 U.S. 749, 764 (1962), where the defendant was indicted for refusal to testify before Congress. There, the statute made it a crime to refuse to answer any question "pertinent to the question under inquiry." The Court says, when constructing an indictment in a case such as Russell, it is important to include facts about the overt act because only a refusal to answer certain questions constitutes a violation of the law. This stands in contrast to the statute criminalizing illegal reentry, where any reentry without proper documentation is illegal; therefore, the case "does not depend so crucially upon such a specific identification of fact."

In *Dashney*,[9] the indictment did not contain the word "willful" but did include the language knowingly, intentionally and unlawfully, in a structuring indictment. The Tenth Circuit held that the indictment adequately informed the defendant of his charges and need to mount a defense.[10] Here the indictment mirrors the statute and without question provides notice to the defendant.

In *Gama-Bastidas*,[11] the defendant argued that the indictment failed to state an element of the offense by failing to state that the defendant possessed cocaine with the intent to distribute. Again the Tenth Circuit held that the indictment was sufficient based upon the caption of the indictment, and the body of the indictment which one could glean the intent to distribute.[12] The TISHCHENKO indictment does not contain such errors.

Likewise, in *United States v. Sutton*,[13] the defendant claimed that the indictment was fatally defective because it failed to allege that he "knowingly or willfully" committed a violation of 18 U.S.C.A. § 924(c)(1), Carrying and Using a Firearm During and in Relation to a Drug Trafficking Offense. The Fourth Circuit held that the indictment tracked the language of the indictment thus was constitutionally sufficient.[14]

Unlike any of the above-cited cases, the TISHCHENKO indictment does not

---

[9] *Dashney*, 117 F.3d at 1206.
[10] *Id*. Note the Tishchenko indictment does not contain such errors.
[11] *Gama-Bastidas,* at 786.
[12] *Id*. at 787. See also *United States v. Hernandez*, 980 F.2d 868, 870 (2d Cir.1992). (The defendant challenged the sufficiency of the indictment on the ground that the body of the indictment failed to recite that he possessed the controlled substance with intent to distribute. Even though the Second Circuit scrutinized the indictment under the stricter standard applicable to pre-verdict challenges, it concluded that the indictment was sufficient because the caption expressly stated possession with intent to distribute, the body of the indictment referenced the charging statutes, and the body of the indictment recited defendant's possession of a large quantity of drugs.)
[13] 961 F.2d 476, 478 (Fourth Cir. 1992).
[14] *Id*. at 479.

contain any of the challenges mentioned. However, even if the indictment did contain such errors it would still pass constitutional sufficiency. Ironically, the defendant contends that the indictment does not provide adequate notice of what he should defend against, yet devotes considerable time arguing that he must defend against the element of a "substantial step."[15]

The majority of defendant's argument centers on the attempt element of a "substantial step." The indictment obviously and correctly provides notice that the defendant would have to defend against the element of a "substantial step" by using the word "attempt" which incorporates a "substantial step." The defendant recognizes this and argues "substantial step" within his own motion, proving that the indictment provides adequate notice. The defendant within his own argument supports the conclusion that the indictment is constitutionally sufficient by identifying what the defendant may need to defend.

The United States can only guess that the defendant is confusing the pleading of Count 1, Conspiracy, which must allege certain facts to support the manner and means of the conspiracy. However, the United States is not required to fact plead counts 2, 3, 4, and 5.[16] As observed above, the United States is only required to notice plead.

The TISHCHENKO indictment is constitutionally sufficient and provides the defendant notice of the charges, what he must defend against, and enables him to plead an acquittal or conviction as to bar double jeopardy.

---

[15] Defendant's Motion to Dismiss counts 4 and 5, pp. 3-6.
[16] The United States is not alleging a conspiracy related to counts 4 and 5 and would not be required to present facts to support those counts within the indictment.

### *B. Attempt is a question of fact, not of law, for the Trier of fact.*

In his challenge to the sufficiency of the indictment, the defendant argues that the government cannot meet its burden of proof regarding attempted Arms Control Act and attempted Smuggling violations without having a single piece of evidence presented by the United States. The defendant is merely challenging the sufficiency of the evidence under the guise of sufficiency of the indictment. As noted in the defendant's motion, there are times when the district court can decide questions of fact. *United States v. Hall*,[17] holds that a district court may make predicate findings of fact under certain limited circumstances. The Tenth Circuit importantly acknowledges "the preferred approach in testing the sufficiency of an indictment cautions against consideration of the strengths and weaknesses of the government's case through fact-finding pretrial hearings,"[18] and warns that, "[A] pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt. We note, however, that such a scenario is not likely to recur and we caution both the trial courts and counsel that the procedure here employed is indeed the rare exception."[19]

The *Hall* court emphasizes that, "[A] district court [may] dismiss charges at the pretrial stage ***under the limited circumstances where the operative facts are undisputed*** and the government fails to object to the district court's consideration of those undisputed

---

[17] 20 F.3d 1084, 1088 (10th Cir. 1994)
[18] *Id.*
[19] *Id.*

facts in making the determination regarding a submissible case."[20] Here the facts are in dispute and the United States objects to the court making a determination of facts when they are in dispute and without the ability to present evidence before the trier of fact.

*United States v. Irving* held that, "[a] **highly fact-specific** inquiry is necessary to properly assess whether a defendant's actions amount to an "attempt," and, in particular, whether his actions qualify as a "substantial step." [21] Likewise, in *United States v. Fleming*, the Tenth Circuit reiterated, "Whether a defendant's actions amount to an attempt, and, in particular, whether his actions qualify as a substantial step, is a highly fact-specific inquiry."[22]  In *United States v. Smith*, the court further declared that "[There is no] bright-line rule as to what constitutes a substantial step.... Whether the defendant has taken a substantial step is a heavily fact-specific question."[23]

As *Resendiz-Ponce* implies, and defendant's own motion demonstrates, the question of what conduct constitutes a "substantial step" is one to be made by the trier of fact. As previously discussed, the holding in *Resendiz-Ponce* allows an indictment to include nothing more than the elements of the offense and the time and place the alleged conduct occurred.[24] Logically this leaves the relationship between case-specific conduct

---

[20] *Id.*
[21] 665 F.3d 1184, 1195 (10th Cir. 2011) (citing *United States v. DeSantiago–Flores*, 107 F.3d 1472, 1479 (10th Cir.1997) ("The dividing line between preparation and attempt is not clear and depends to a high degree on the surrounding factual circumstances."), overruled on other grounds by *United States v. Holland*, 116 F.3d 1353, 1359 n. 4 (10th Cir.1997); see also *United States v. Neal*, 78 F.3d 901, 906 (4th Cir.1996) ("Whether conduct represents a substantial step depends on the 'surrounding factual circumstances' and, therefore, such determinations are necessarily fact specific."); *United States v. Rivera–Sola*, 713 F.2d 866, 869 (1st Cir.1983) (noting "the supreme importance of the facts in any attempt case")).
[22] *United States v. Fleming*, 667 F.3d 1098, 1107 (10th Cir. 2011) (Citing *United States v. Washington*, 653 F.3d 1251, 1264 (10th Cir. 2011).
[23] *United States v. Smith,* 264 F. F.3d 1012, 1017 (10th Cir. 2011).
[24] *Resendiz-Ponce*, at 107, 109-10.

and the "substantial step" element as one to be carried out by the trier of fact. The defendant by pointing to Tenth Circuit Pattern Jury Instructions to define the elements of "attempt" and "substantial step," acknowledges the "substantial step" question is one for the jury.

   *1. Even assuming the Court may make a pretrial predicate finding of fact, there exists sufficient evidence of the attempted commission of the offenses in Counts 4 and 5 of the Indictment.*

An attempt requires both (1) an "intent to commit the substantive offense," and (2) the "commission of an act which constitutes a substantial step towards commission of the substantive offense."[25]

"A substantial step must be something more than mere preparation," "yet may be less than the last act necessary before the actual commission of the substantive crime,"[26] The fact that further, major steps remain "before the crime can be completed does not preclude a finding that the steps already undertaken are substantial."[27]

---

[25] *United States v. Vigil*, 523 F.3d 1258, 1267 (10th Cir. 2008)(quoting *United States v. Smith*, 264 F.3d 1012, 1015 (10th Cir.2001)); Most jurisdictions in the United States have adopted the Model Penal Code definition of attempt, which requires demonstration of (1) an intent to engage in criminal conduct, and (2) conduct constituting a substantial step toward commission of the intended offense which strongly corroborates the actor's criminal intent Model Penal Code § 5.01(1); See generally CHARLES DOYLE, CONG. RESEARCH SERV. , R42001, ATTEMPT: AN OVERVIEW OF FEDERAL CRIMINAL LAW 1 (2015). .

[26] *Irving*, at 1196. (citing *United States v. Vigil*, 523 F.3d 1258, 1267 (10th Cir.2008); *United States v. Manley*, 632 F.2d 978, 987 (2d Cir.1980)

[27] *United States v. Savaiano*, 843 F.2d 1280, 1297 (10th Cir. 1988); *United States v. Farhane*, 634 F.3d 127, 147-48 (2nd Cir. 2011) ("While the parameters of the substantial step requirement are simply stated, they do not always provide bright lines for application. This is not surprising; the identification of a substantial step, like the identification of attempt itself, is necessarily a matter of degree that can vary depending on the particular facts of each case viewed in light of the crime charged. An act that may constitute a substantial step towards the commission of one crime may not constitute such a step with respect to a different crime. Thus, substantial-step analysis necessarily begins with a proper understanding of the crime being attempted…. Further important to a substantial-step assessment is an understanding of the underlying conduct proscribed by the crime being attempted. The conduct here at issue, material support to a foreign terrorist organization, is different from drug trafficking and any number of activities (e.g., murder, robbery, fraud) that are criminally proscribed because they are inherently harmful. The material support statute criminalizes a range of conduct that may not be harmful in itself but that may assist, even indirectly, organizations committed to pursuing acts of devastating harm…. Accordingly, while a substantial step to commit a robbery must be conduct planned clearly to culminate in that particular harm, a substantial step towards

Courts have consistently found creating a broad definition of "substantial step" to be an insurmountable task, and they have made it clear the question is one meant to be analyzed on a case-by-case basis. "This line between mere preparation and a substantial step is inherently fact specific; conduct that would appear to be mere preparation in one case might qualify as a substantial step in another."[28]

In the present case, there is no occasion where the defendant, without the appropriate export license, could lawfully request designated defense articles from the United States Munitions List (USML) be exported from the United States to Russia. Similarly, the defendant could not lawfully facilitate the transportation, and sale of those articles, knowing that exportation from the United States to Russia was in violation of the laws and regulations of the United States. Likewise, the defendant could not ship similar materials in his possess from Russia to other countries.

The facts must be reviewed in the entire context of the case. As presented in the indictment, on June 22, 2011, the defendant sought assistance from U.S. citizens to circumvent arms control import laws to ship F-16 technical data to Russia.[29] The defendant was successful in convincing his co-defendant, Kenneth Sullivan (SULLIVAN) to circumvent export laws to ship the flight manuals he obtained via an eBay auction, to Russia.[30] The seller, and eBay, informed the defendant, that the items were export controlled and could not be shipped outside the United States without an

---

the provision of material support need not be planned to culminate in actual terrorist harm, but only in support—even benign support—for an organization committed to such harm.")
[28] *United States v. Muratovic*, 719 F.3d 809, 815 (7th Cir. 2013).
[29] Indictment ¶¶ 7, 8, 11 a-d, and 12 a-e.
[30] *Id*.

9

export license. An agreement was reached between SULLIVAN and the defendant, that the defendant would change his shipping address to SULLIVAN's address. Once SULLIVAN received the flight manuals, he shipped them to the defendant in Russia. Additionally, during the period from January 2012, through September 2015, the defendant auctioned F-16 manuals subject to export laws to persons located in other countries.[31] This evidence proves the defendant's previous intent to violate arms export laws.

In light of the defendant's past conduct and success in obtaining flight manuals, the defendant's continued efforts demonstrates several "substantial steps:"

(1) *The defendant needs F-16 and A-10 manuals which he cannot find through other sources*.

In March 2016, an undercover agent (UCA) contacted the defendant through an online forum seeking flight manuals related to U.S. aircraft knowing the defendant actively sold the flight manuals. On March 25, 2016, the UCA and TISHCHENKO spoke via Skype. TISHCHENKO stated that, "I am collecting manuals for many years now.. And still can't reach some stuff. We need it in our work.."[32] The UCA asked what manuals the defendant needed. TISHCHENKO responds, "I'd like to get some maintenance manuals for F-16C related to avionics. . . . Needed to understand how the stuff works to implement it in the DCS. . . .

---

[31] *Id*. at ¶ 12e.
[32] Skype Chat March 25, 2016.

Actually maintenance manuals for any of jets including A-10. . . . so-called 'General System' manuals, where the systems are described in a good detail."[33]

> *(2) The defendant provides a purchase list of 26 flight manuals including 3 that he describes as "too sensitive."*

On March 26, 2016, TISHCHENKO, sends a lists of F-16 manuals to purchase and ship to Russia, including three classified manuals.[34] Despite previously stating that he was not seeking F-35 and F-22 manuals because they are "too sensitive," TISHCHENKO goes on to request F-35 and F-22 manuals[35] TISHCHENKO states, "Also it would be great to get F-35 and F-22 flight manuals. I can guarantee that these manuals will be not provided to any 3rd persons, and I think even not shown to anyone in our company (Eagle Dynamics)." Clearly, the defendant continues to request more and more information seeking classified materials knowing that they cannot be shipped to him in Russia. Each contact is a substantial step in the commission of the underlying offenses of attempted arms control violations and attempted smuggling.

> *(3) The defendant acknowledges that the UCA is sending him sensitive information which is dangerous.*

To further demonstrate the defendant's expectations and intent, on March 29, 2016, TISHCHENKO wrote the UCA, "Honesty, *I am worrying about you a bit, as you are going to send me 'slightly sensitive' stuff. Be careful*."[36] Again, the defendant expects the UCA to ship the requested flight manuals.

---

[33] *Id*.
[34] Skype Chat March 26, 2016.
[35] Skype Chat March 25, 2016.
[36] Skype Chat March 29, 2016.

11

> *(4) The defendant and the UCA make plans to travel to Prague to meet and exchange flight manuals.*

Lastly, to illustrate additional substantial steps the defendant sought, in the same March 29, 2016, conversation the UCA offers to meet the defendant in Prague. TISHCHENKO, states, "Yes this is an option. I have Shengen visa for one year. This helps."[37]

The fact that further steps remain or are possible does not negate the substantial steps the defendant took to secure the flight manuals in violation of export laws. The fact that further steps remain before the Arms Control Act and Smuggling violations are completed does not preclude a finding that the steps TISHCHENKO took were substantial, meet the elements of attempted Arms Control Act and attempted Smuggling violations. The United States is not required to wait until the crimes are fully completed before seeking an indictment before a grand jury. In fact, the grand jury heard the evidence the government presented, considered whether it was sufficient to prove the elements of the offenses charged, and returned a true bill.

Whether for nefarious reasons or legitimate business, the defendant continued to take substantial steps to obtain export controlled materials and arrange for concealed shipment of those materials in violation of the law. The United States respectfully requests that this Court deny the defendant's motion.

//

//

---

[37] *Id.*

## **CONCLUSION**

Based upon the foregoing, the United States respectfully requests that this Court deny the defendant's motion on the grounds that (1) the indictment is sufficient on its face; (2) the substantial step determination is a question of fact, reserved for the trier of fact; and (3) the evidence is sufficient to find that the defendant took at least one substantial step toward the completion of his crimes.

Dated this 20th day of May 2019.

JOHN W. HUBER
United States Attorney

*/s/ Carlos A. Esqueda*
CARLOS A. ESQUEDA
Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of the United States Attorney's Office, and that a copy of the foregoing UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNTS 4 AND 5 was delivered to all parties named below, via electronic filing this 20th day of May 2019.


Wojciech Nitecki
Robert L. Steele
Attorney for the Defendant

*/s/ Cody Alleman*
Cody Alleman